IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**GARY MILLER,**

    Plaintiff,

v.                                                      **CIVIL ACTION NO. 3:12-CV-114**
                                                         **(JUDGE GROH)**

**HUNTINGTON NATIONAL BANK, N.A.;**
**HUNTINGTON MORTGAGE GROUP;**
**FRANK BRADLEY; APPRAISAL**
**ASSOCIATES; LORI SNIVELY; and**
**JOHN DOE NOTE HOLDER,**

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING BANKRUPTCY TRUSTEE'S MOTION TO INTERVENE**

Pending before this Court is Bankruptcy Trustee Robert W. Trumble's Motion to Intervene [Doc. 42], filed on November 8, 2012. This motion has since been fully briefed and is now ripe for decision. Having reviewed the record and considered the arguments of the parties, this Court concludes that the motion to intervene should be **GRANTED**.

**BACKGROUND**

**I.**    **Factual and Procedural History**

In September of 2004, Plaintiff Gary Miller ("Plaintiff") purchased a home in Morgan County, West Virginia, for $120,000.00. Financing was provided by Defendants Huntington National Bank and Huntington Mortgage Group (collectively "Huntington Bank"). Afterwards, the Plaintiff alleges that Huntington Bank began to engage in a predatory lending practice known as "flipping," which involves using inflated appraisals and other

unlawful practices to induce unsophisticated customers into a series of unwise and expensive loans.

In or around September of 2006, the Plaintiff alleges that Huntington Bank solicited him to refinance, which he did in the principal amount of $201,750.00. On June 13, 2007, the Plaintiff alleges that his home loan was again "flipped" by Huntington Bank, this time in the principal amount of $220,000.00. On April 1, 2008, the Plaintiff alleges that his home loan was again "flipped" by Huntington Bank in the principal amount of $264,000.00. On April 17, 2009, the Plaintiff alleges that his home loan was "flipped" for a final time, in the principal amount of $273,500.00. The Plaintiff asserts that each successive "flip" by Huntington Bank generated thousands of dollars in fees and other revenue to Huntington Bank, and that upon information and belief, the appraisal performed by Defendant Frank Bradley in connection with the Huntington loan was false and inflated. The Plaintiff alleges that Defendant Lori Snively, a loan officer for Huntington Bank, was the primary Huntington Bank official responsible for originating the aforementioned loans.

Prior to filing the instant action in state court, the Plaintiff filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of West Virginia. The Plaintiff listed his property, the loans for which are the subject of this case, but did not disclose any possible claims against the Defendants. The Chapter 7 Trustee issued a discharge on September 28, 2010, and closed the case.

On December 16, 2011, the Plaintiff filed the instant Complaint [Doc. 1] in the Circuit Court of Kanawha County, West Virginia, alleging unconscionable contracts on the part of Defendant Huntington Bank (Count I); fraud on the part of Defendants Huntington Bank and Snively (Count II); negligent misrepresentation on the part of Defendants Huntington Bank

and Snively (Count III); dishonesty, misrepresentation, and breach of professional standards on the part of Defendant Bradley (Count IV); acceptance of fee contingent on predetermined conclusion on the part of Defendant Bradley (Count V); negligence on the part of Defendant Bradley (Count VI); and joint venture, conspiracy, and agency on the part of all Defendants (Count VII).

The Plaintiff's bankruptcy estate has recently been re-opened to administer this case as a new asset. A trustee has been appointed, Plaintiff has filed an amended schedule of assets that includes the claim, and special counsel has been hired to pursue the claim (who is also Plaintiff's counsel).

On April 20, 2012, the Defendants removed this action to the United States District Court for the Southern District of West Virginia [Doc. 1]. On September 6, 2012, the United States District Court for the Southern District of West Virginia transferred this action to this Court, finding specifically that: (1) the Plaintiff's bankruptcy case has been re-opened and is currently pending in the United States Bankruptcy Court for the Northern District of West Virginia; (2) there is an unresolved issue as to whether and how the Plaintiff can bring this action that is best resolved in coordination with the bankruptcy proceedings;[1] and (3) even

---

[1]

If the claim belongs entirely in the Chapter 7 bankruptcy estate, the Plaintiff does not have standing to bring this action. When a debtor files for Chapter 7 bankruptcy, the petition creates a bankruptcy estate which contains "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1) (2006). This estate includes causes of action. See **In re Bogdan**, 414 F.3d 507, 512 (4th Cir. 2005) (citing **Polis v. Getaways, Inc.**, 217 F.3d 899, 901 (7th Cir. 2000)); see also **Miller v. Pacific Shore Funding**, 287 B.R. 47, 50 (D. Md. 2002).

The bankruptcy trustee administers the bankruptcy estate. **In re Bunker**, 312 F.3d 145, 150 (4th Cir. 2002). Because a pre-petition claim belongs to the bankruptcy estate, the trustee has "full authority" over the claim, and "before the debtor or a creditor may pursue a claim, there must be a judicial determination that the trustee in bankruptcy has

if the Plaintiff has standing, the trustee may still be a necessary plaintiff for this case to proceed. The Southern District of West Virginia thus found that transferring venue to this Court would aid in the coordination of this case with the bankruptcy proceedings to ensure that jurisdictional issues are properly resolved.

On November 8, 2012, the Bankruptcy Trustee, Robert W. Trumble ("Trustee"), filed a Motion to Intervene [Doc. 42]. On November 26, 2012, Defendants Huntington National Bank, Huntington Mortgage Group, and Lori Snively filed a memorandum of law in opposition to the Trustee's motion [Doc. 44]. On December 4, 2012, the Trustee filed a reply.

## DISCUSSION

### I. Applicable Standards

Fed. R. Civ. P. 17(a)(3) provides that:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

---

abandoned the claim." **Steyr-Daimler-Puch of Am. Corp. v. Pappas**, 852 F.2d 132, 136 (4th Cir. 1988); *see also* **Miller,** 287 B.R. at 50.
Under United States bankruptcy law and West Virginia state law, however, debtors are allowed to exempt some portion of their assets from the bankruptcy estate. *See* 11 U.S.C. §522(b); W. Va. Code §38-10-4. If the Plaintiff properly exempts some portion of the claims in this case, he may have standing to bring the claim for that amount. *See* **Wissman v. Pittsburgh National Bank**, 942 F.2d 867, 871-72 (4th Cir. 1991). Here, Plaintiff has claimed an exemption up to the West Virginia state law maximum under the "wild card" provision, an amount which could be nearly $20,000.00. *See* W. Va. Code §38-10-4(e), pursuant to which a debtor can exempt "eight hundred dollars plus any unused amount" of W. Va. Code §38-10-4(a), which allows for a maximum exemption of twenty-five thousand dollars. The amended schedule currently lists $5,800 of exemptions in addition to using the "wild card" exemption for the claims in this case.

Fed. R. Civ. P. 24(a) provides that:

> On timely motion, the court **must** permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(emphasis added).

Fed. R. Civ. P. 24(b)(1) provides that:

> On timely motion, the court **may** permit anyone to intervene who: (A) is given an unconditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact.

(emphasis added). In exercising its discretion pursuant to Fed. R. Civ. P. 24(b)(1), "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). At the same time, however, policy in the Fourth Circuit favors liberal intervention under Rule 24. ***Feller v. Brock***, 802 F.2d 722, 729 (4th Cir. 1986).

## II. Analysis

Defendants Huntington Bank and Snively oppose the Trustee's motion to intervene. They argue that the Defendants removed this case on April 20, 2012, objecting at that time to the Plaintiff's standing, that the Defendants moved for judgment on the pleadings on May 21, 2012, again arguing that the Plaintiff lacked standing, and that the Defendants raised the Plaintiff's purported lack of standing yet again in September and October of 2012 via a reply memorandum in support of judgment on the pleadings and an objection in bankruptcy court to the Plaintiff's attempt to amend his bankruptcy schedules. The

5

Defendants argue that the Trustee nevertheless waited until November of 2012 to file his motion to intervene. Thus, the Defendants argue, pursuant to Rule 17(a)(3), "[i]nsofar as 'the determination of the right party to bring the action was not difficult' in this case, 'no excusable mistake' was made in that regard, and no effort was made for the real party in interest, i.e. the Trustee, to 'ratify, join, or be substituted' within a reasonable time of Defendants' objection, this action does not fall within the purview of Rule 17(a)(3), and therefore is subject to dismissal based on Plaintiff's lack of standing . . . [a]ccordingly, the Trustee's motion to join pursuant to Rules 17 and 24 should be denied." (citing FED. R. CIV. P. 17(a)(3); 6A Charles Alan Wright, et al., *Federal Practice and Procedure* §1555 (3d ed. 2011 update); **Roanoke Properties Ltd. Partnership v. Dewberry**, 201 F.3d 437 (4th Cir. 1999); **Intown Properties Managment, Inc. v. Wheaton Van Lines, Inc.**, 271 F.3d 164, 168-69 (4th Cir. 2001)).

The Trustee, on the other hand, argues that with regard to timeliness under Rules 17 and 24, the need to intervene did not arise until October 12, 2012, the date Defendants objected in bankruptcy court to the Plaintiff's amended schedules and his intention to exempt a portion of any recovery from this lawsuit. The Trustee argues that prior to that time, the Plaintiff had standing to pursue his claims and exempt a portion of any recovery that he might obtain, turning over any recovery that he received above and beyond the amount of allowable exemption to the bankruptcy estate. The Trustee argues that filing his motion to intervene less than a month after the Defendants' objection to the Plaintiff's claimed exemption is sufficiently timely for purposes of Rules 17 and 24. The Trustee asserts that to the extent Defendant Huntington Bank has objected to the Plaintiff's claimed

exemption, as a result of which the Plaintiff could lose standing to pursue at least part of his lawsuit, the Trustee seeks leave to intervene in order to preserve the Trustee's statutory interest in the case.

In **Wissman v. Pittsburgh National Bank**, 942 F.2d 867 (4th Cir. 1991), the Fourth Circuit held that a bankruptcy debtor has standing to pursue a cause of action up to the amount of any allowable bankruptcy exemption. *Id.* at 871-72. Any recovery above and beyond an allowable bankruptcy exemption must be turned over to the bankruptcy estate at the close of the case. *Id.* at 872-73. Furthermore, a trustee should be given an opportunity to intervene as a party plaintiff in order to assert a claim on behalf of the estate if they so choose. *Id.* at 873.

Accordingly, the Court finds that the need for intervention on the part of the Trustee in the instant case did not arise until October 12, 2012, when the Defendants objected to the Plaintiff's claimed exemption. Prior to that time, the Plaintiff had standing to pursue his claims and exempt a portion of any recovery that he might obtain. Any recovery above and beyond that amount would have belonged to the bankruptcy estate. After the Defendants objected to the Plaintiff's claimed exemptions, however, a question arose with regard to the Plaintiff's standing, because if the Plaintiff is not entitled to an exemption, then he would have no standing to pursue a claim and the Trustee would be the only real party in interest. The Court therefore finds the Trustee's motion to intervene at this juncture in order to pursue claims on behalf of the bankruptcy estate to be both appropriate and timely.

Pursuant to Fed. R. Civ. P. 17(a)(3), "the [C]ourt may not dismiss [this] action for failure to prosecute in the name of the real party in interest," because the Trustee moved

7

to join the action within a "reasonable" time. The Defendants filed their objection to the Plaintiff's claimed exemption on October 12, 2012. The Trustee filed his motion to intervene in this case on November 8, 2012. The Court finds less than a month to be a reasonable time in which to intervene.

A would-be intervenor under Rule 24(a)(2) must satisfy four requirements: (1) the intervenor must submit a timely motion; (2) it must demonstrate a "direct and substantial interest" in the property or transaction; (3) it must prove that the interest would be impaired if the intervention was not allowed; and (4) it must establish that the interest is inadequately represented by existing parties. *See* **First Penn-Pacific Life Ins. Co. v. William R. Evans, Chartered**, 200 F.R.D. 532, 536 (D. Md. 2001) (citing **In re Richman**, 104 F.3d 654, 659 (4th Cir. 1997)). This Court finds all four elements to be met with regard to the Trustee. The Trustee's motion was timely, he has a substantial interest in the Plaintiff's lawsuit due to his position as trustee of the bankruptcy estate, his interest in the lawsuit could be impaired or impeded if intervention is not permitted, and there is a possibility that the Plaintiff might lack standing to prosecute this case in his own name.

However, even if the Trustee did not qualify as an intervenor under Rule 24(a)(2), the Court finds that he would so qualify under Rule 24(b)(1)(B). "Permissive intervention" contemplates intervention upon timely application when an applicant "has a claim or defense that shares with the main action a common question of law or fact." In exercising its discretion to permit such intervention, "a court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *See* FED. R.CIV. P. 24(b)(1)(B); **In re Sierra Club**, 945 F.2d 776, 779 (4th Cir. 1991).

The Trustee's interest in this case on behalf of the bankruptcy estate clearly shares questions of fact in common with the Plaintiff's Complaint. Moreover, the Court does not find that permitting the Trustee to intervene will be prejudicial to either the Plaintiff or the Defendants. Therefore, the Trustee's motion to intervene is **GRANTED**.

## **CONCLUSION**

For the foregoing reasons, this Court concludes that the Trustee's Motion to Intervene **[Doc. 42]** should be, and hereby is, **GRANTED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and/or *pro se* parties.

**DATED:** February 15, 2013.

GINA M. GROH
UNITED STATES DISTRICT JUDGE