IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**GARY MILLER,**

        Plaintiff,

**v.**

                                                  **CIVIL ACTION NO. 3:12-CV-114**
                                                 **(JUDGE GROH)**

**HUNTINGTON NATIONAL BANK, N.A.;
HUNTINGTON MORTGAGE GROUP;
FRANK BRADLEY; APPRAISAL
ASSOCIATES; LORI SNIVELY; and
JOHN DOE NOTE HOLDER,**

        Defendants.

## MEMORANDUM OPINION AND ORDER ABSTAINING FROM AND REMANDING CASE

Pending before this Court is Plaintiff Gary Miller's Motion to Abstain and Remand [Doc. 8], filed on May 21, 2012.   This motion has since been fully briefed and is now ripe for decision.   Having reviewed the record and considered the arguments of the parties, this Court concludes that the motion to abstain and remand should be **GRANTED**.

## I.    Factual and Procedural History

In September of 2004, Plaintiff Gary Miller ("Plaintiff") purchased a home in Morgan County, West Virginia, for $120,000.00.   Defendants Huntington National Bank and Huntington Mortgage Group (collectively "Huntington Bank") provided financing. After the initial financing, the Plaintiff alleges that Huntington Bank engaged in a predatory lending practice known as "flipping," by using inflated appraisals and other unlawful practices to induce unsophisticated customers (such as the Plaintiff) into a

series of unwise and expensive loans.

In or around September of 2006, the Plaintiff alleges that Huntington Bank solicited him to refinance, which he did in the principal amount of $201,750.00.   On June 13, 2007, the Plaintiff alleges that his home loan was again "flipped" by Huntington Bank, this time in the principal amount of $220,000.00.   On April 1, 2008, the Plaintiff alleges that his home loan was again "flipped" by Huntington Bank in the principal amount of $264,000.00.   On April 17, 2009, the Plaintiff alleges that his home loan was "flipped" for a final time, in the principal amount of $273,500.00.   The Plaintiff asserts that each successive "flip" by Huntington Bank generated thousands of dollars in fees and other revenue to Huntington Bank. The appraisal performed by Defendant Frank Bradley in connection with the Huntington loan was allegedly false and inflated.   The Plaintiff alleges that Defendant Lori Snively, a loan officer for Huntington Bank, was the primary Huntington Bank official responsible for originating the aforementioned loans.

Prior to filing the instant action in state court, the Plaintiff filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of West Virginia.   The Plaintiff listed his property, the loans for which are the subject of this case, but did not disclose any possible claims against the Defendants.   The Chapter 7 Trustee issued a discharge on September 28, 2010, and closed the case.

On December 16, 2011, the Plaintiff filed the instant Complaint [Doc. 1] in the Circuit Court of Kanawha County, West Virginia, alleging unconscionable contracts on the part of Defendant Huntington Bank (Count I); fraud on the part of Defendants Huntington Bank and Snively (Count II); negligent misrepresentation on the part of Defendants Huntington Bank and Snively (Count III); dishonesty, misrepresentation, and

breach of professional standards on the part of Defendant Bradley (Count IV); acceptance of fee contingent on predetermined conclusion on the part of Defendant Bradley (Count V); negligence on the part of Defendant Bradley (Count VI); and joint venture, conspiracy, and agency on the part of all Defendants (Count VII).

The Plaintiff's bankruptcy estate has recently been re-opened to administer this case as a new asset.  A trustee has been appointed, Plaintiff has filed an amended schedule of assets that includes the claim, and special counsel has been hired to pursue the claim, who is also Plaintiff's counsel for purposes of the instant litigation.

On April 20, 2012, the Defendants removed this action to the United States District Court for the Southern District of West Virginia [Doc. 1].  On September 6, 2012, the United States District Court for the Southern District of West Virginia transferred this action to this Court, finding specifically that: (1) the Plaintiff's bankruptcy case has been re-opened and is currently pending in the United States Bankruptcy Court for the Northern District of West Virginia; (2) there is an unresolved issue as to whether and how the Plaintiff can bring this action that is best resolved in coordination with the bankruptcy proceedings;[1] and (3) even if the Plaintiff has standing, the trustee may still be a

---

[1]

If a claim belongs entirely in the Chapter 7 bankruptcy estate, the Plaintiff would not have standing to bring this action.  When a debtor files for Chapter 7 bankruptcy, the petition creates a bankruptcy estate which contains "all legal or equitable interests of the debtor in property as of the commencement of the case."   11 U.S.C. §541(a)(1) (2006). This estate includes causes of action.   See *In re Bogdan*, 414 F.3d 507, 512 (4th Cir. 2005) (citing *Polis v. Getaways, Inc.*, 217 F.3d 899, 901 (7th Cir. 2000)); *see also Miller v. Pacific Shore Funding*, 287 B.R. 47, 50 (D. Md. 2002).

The bankruptcy trustee administers the bankruptcy estate.   *In re Bunker*, 312 F.3d 145, 150 (4th Cir. 2002).   Because a pre-petition claim belongs to the bankruptcy estate, the trustee has "full authority" over the claim, and "before the debtor or a creditor may pursue a claim, there must be a judicial determination that the trustee in bankruptcy

3

necessary plaintiff for this case to proceed.   The Southern District of West Virginia thus found that transferring venue to this Court would aid in the coordination of this case with the bankruptcy proceedings to ensure that jurisdictional issues are properly resolved. On February 15, 2013, this Court entered an Order granting the bankruptcy trustee's motion to intervene [Doc. 50].

On May 21, 2012, the Plaintiff filed the instant Motion to Abstain and Remand [Doc. 8], while the case was pending in the Southern District of West Virginia.   On September 7, 2012, Defendants Huntington Bank and Snively filed a response to the Plaintiff's motion.   On September 14, 2012, the Plaintiff filed a reply.   This matter is now ripe for adjudication.

## II.    Jurisdiction for Removal

Defendants in civil actions may remove a matter from state to federal court if the latter forum has original subject matter jurisdiction.   The Defendants removed the instant matter based upon allegations of both diversity jurisdiction under 28 U.S.C. §1332 and bankruptcy-related jurisdiction under 28 U.S.C. §1334(a)-(b).

---

has abandoned the claim." ***Steyr-Daimler-Puch of Am. Corp. v. Pappas***, 852 F.2d 132, 136 (4th Cir. 1988); *see also **Miller,*** 287 B.R. at 50.
    Under United States bankruptcy law and West Virginia state law, however, debtors are allowed to exempt some portion of their assets from the bankruptcy estate.   *See* 11 U.S.C. §522(b); W. Va. Code §38-10-4.   If the Plaintiff properly exempts some portion of the claims in this case, he may have standing to bring the claim for that amount.   ***See Wissman v. Pittsburgh National Bank***, 942 F.2d 867, 871-72 (4th Cir. 1991).   Here, Plaintiff has claimed an exemption up to the West Virginia state law maximum under the "wild card" provision, an amount which could be nearly $20,000.00.   *See* W. Va. Code §38-10-4(e), pursuant to which a debtor can exempt "eight hundred dollars plus any unused amount" of W. Va. Code §38-10-4(a), which allows for a maximum exemption of twenty-five thousand dollars.   The amended schedule currently lists $5,800 of exemptions in addition to using the "wild card" exemption for the claims in this case.

The burden of demonstrating jurisdiction for removal generally resides with the defendant. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921). Likewise, the plaintiff's role in the context of disputes about removability is also clearly defined: the plaintiff is the master of his or her claim. *See Oklahoma Tax Com'n v. Graham*, 489 U.S. 838 (1989). This means that, "if [the plaintiff] chooses not to assert a federal claim . . . or properly joins a nondiverse party, defendants cannot remove the action to federal court on the ground that an alternative course of conduct available to the plaintiff would have permitted removal of the case." 14B Charles Wright, *Federal Practice and Procedure*, §3721, p. 59 (2009). Moreover, as the Fourth Circuit has indicated, if federal jurisdiction is doubtful, the case must be remanded. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

The Defendants claim both of the aforementioned jurisdictional bases for removal to this Court. First, the Defendants argue that pursuant to 28 U.S.C. §1334, this Court has jurisdiction as the claim constitutes a civil proceeding arising under Title 11 of the United States Code, or arising in or related to a case under Title 11. The Defendants argue that this action constitutes a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(K), because it seeks, *inter alia*, a determination of the validity, extent, or priority of a lien.

Second, the Defendants argue this Court has diversity jurisdiction under 28 U.S.C. §§1332 and 1441. The complaint, on its face, lacks the required complete diversity as both the Plaintiff and Defendant Bradley are residents of West Virginia.[2] However, the

---

[2] Huntington National Bank is a national banking corporation with its main office in Columbus, Ohio, and Defendant Snively is a resident of the State of Maryland.

Defendants assert that Defendant Bradley has been fraudulently joined, and the Court may therefore disregard his citizenship for purposes of diversity jurisdiction.

The Plaintiff argues that Defendant Bradley has not been fraudulently joined, and moves the Court to abstain from and remand this case pursuant to 28 U.S.C. §§1334(c)(1) and 1452(b).

### A. Diversity Jurisdiction

Diversity jurisdiction exists where the amount in controversy exceeds $75,000, exclusive of interest and costs, and all plaintiffs are citizens of different states than each defendant.   *Lincoln Property Co. v. Roche*, 546 U.S. 81, 84 (2005).   Typically, diversity jurisdiction is determined from "the face of the plaintiff's well-pled complaint." *Ashworth v. Albers Medical, Inc.*, 395 F.Supp.2d 395, 402 (S.D. W. Va. 2005).   An exception to this well-pled complaint rule is the doctrine of fraudulent joinder.   In the context of diversity jurisdiction, this exception allows a court to disregard the citizenship of certain parties.   In asserting fraudulent joinder, a defendant seeking removal argues that other defendants were improperly joined because either there is no possible successful cause of action against those defendants or the complaint pled fraudulent facts.   *See Wyatt v. Charleston Area Med. Ctr., Inc.*, 651 F.Supp.2d 492, 496 (S.D. W. Va. 2009) (citing *Ashworth*, 395 F.Supp.2d at 403).   In elaborating upon these requirements, the *Ashworth* court stated that:

> The burden of demonstrating fraudulent joinder is heavy. The defendants must show that plaintiff cannot establish a claim against the non-diverse defendant even after resolving all issues of fact and law in the plaintiff's favor.   Moreover, a claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted.   The standard is even more favorable to the plaintiff than the standard for

6

> ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and, indeed, if the plaintiff demonstrates even a glimmer of hope for relief, the jurisdictional inquiry must end. Nonetheless, a finding of fraudulent joinder is warranted when the record before the court demonstrates either that no cause of action is stated against the non-diverse defendant, or in fact no cause of action exists.   In other words, a joinder is fraudulent if there is no real intention to get a joint judgment, and there is no colorable ground for so claiming.

*Ashworth*, 395 F.Supp.2d at 403 (internal citations and quotations omitted).

The Fourth Circuit has held in the context of fraudulent joinder that "the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available."   *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999).

In recognizing the complaint lacks complete diversity of citizenship on its face, the Defendants argue that because Defendant Bradley has been fraudulently joined, his citizenship should be disregarded for the purposes of diversity jurisdiction.   The Defendants argue the Plaintiff's claims against Defendant Bradley are time-barred, and as a result, the Plaintiff cannot establish a claim against Defendant Bradley.

The Defendants correctly assert the relevant statutes of limitation applicable to this case are two years.   *See, e.g., Trafalger House Const., Inc. v. ZMM, Inc.*, 567 S.E.2d 294, 299 (W. Va. 2002) ("[u]nder West Virginia law, claims in tort for negligence, professional negligence, and misrepresentation . . . are governed by a two-year statute of limitation.") (citing W. Va. Code §55-2-12); Syllabus Pt. 10, *Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va. 2009) ("[t]he statute of limitation for a civil conspiracy claim is determined by the nature of the underlying conduct on which the claim for conspiracy is based.").   The Defendants argue that inasmuch as Defendant Bradley conducted the

7

subject appraisal in March of 2008, and the Plaintiff did not file the instant suit until December of 2011, more than three and one half years later, the Plaintiff's claims are time-barred.

The Plaintiff, on the other hand, argues that West Virginia's discovery rule tolls the applicable statutes of limitation. The Plaintiff alleges he did not discover Defendants' alleged predatory lending and appraisal fraud until five months before filing suit, when his current counsel discovered and reviewed the appraisal.

Under West Virginia's discovery rule, "'the statute of limitations is tolled until a claimant knows or by reasonable diligence should have known of his claim.'" **Dunn v. Rockwell**, 689 S.E.2d 255, 262 (W. Va. 2009) (quoting **Gaither v. City Hospital, Inc.**, 487 S.E.2d 901, 906 (W. Va. 1997)); *see also* **Lee v. Allstate Ins. Co.**, 2010 WL 4806886, at *4 (N.D. W. Va. Nov. 18, 2010).   In West Virginia, courts apply a five-step analysis to determine whether a cause of action is time barred:

> First, the court should identify the applicable statute of limitation for each cause of action.  Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred.   Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action . . . Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action.  Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled.  And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine.  Only the first step is purely a question of law; the resolution of steps two through five will

8

generally involve questions of material fact that will need to be
resolved by the trier of fact.

Syllabus Pt. 5, **Dunn**, 689 S.E.2d 255.

"[I]f [a] statute of limitations issue is difficult to determine, the doctrine of fraudulent

joinder is not appropriate, and the case should be remanded to the state court." **Shaffer**

**v. Northwestern Mut. Life Ins. Co.**, 394 F.Supp.2d 814, 818 (N.D. W. Va. 2005) (citing

**Riverdale Baptist Church v. Certainteed Corp.**, 349 F.Supp. 943, 949 (D. Md. 2004)).

Accord **Halkias v. AXA Equitable Life Ins. Co.**, 2006 WL 890620, at *2 (S.D. W. Va.

April 4, 2006 ) (same); **Burgess v. Infinity Financial Employment Services, LLC**, 2012

WL 399178, at *6 (S.D. W. Va. Feb. 7, 2012) ("[w]hile there is a distinct possibility that

Plaintiff's claims against Defendant Infinity are time-barred, Defendant Flagstar must

prove there is 'no possibility' that they are not . . . [i]t fails to do so here . . . [t]he fairest

approach is to remand this case to state court for a full airing of issues that are

pre-eminently factual in nature and involve a determination of state law."); **Lee v. Allstate**

**Ins. Co.**, 2010 WL 4806886, at *4 (N.D. W. Va. Nov. 18, 2010) ("[b]ecause it is possible . .

. that the statute of limitations has been tolled under the discovery rule, this Court must

remand this civil action . . . ."); **Fellure v. Equitable Variable Life Ins. Co.**, 2005 WL

3115851, at *2 (S.D. W. Va. Nov. 21, 2005) ("[w]here the application of the statute of

limitations is factually difficult to determine, the doctrine of fraudulent joinder, insofar as it

is sought to be invoked on the ground that a claim is barred by the passage of time, is not

applicable.").

The Defendants argue that the discovery rule is only applicable to tort claims, not

to claims for professional negligence or alleged statutory violations seeking recovery of

economic losses.   However, under West Virginia law, "where a cause of action is *based on tort* or *on a claim of fraud*, the statute of limitations does not begin to run until the injured person knows, or by the exercise of reasonable diligence should know, of the nature of his injury, and determining that point in time is a question of fact to be answered by the jury."   Syllabus Pt. 3, **Stemple v. Dobson**, 400 S.E.2d 561 (W. Va. 1990) (emphasis added).   Here, the Plaintiff's statutory claims are all based on the Defendants' allegedly tortious conduct in negligently and fraudulently handling the Plaintiff's appraisal and loan.   The Defendants do not cite any law from West Virginia or from the Fourth Circuit for their assertion that the discovery rule should not apply to professional negligence cases against an appraiser.   Under a similar set of facts, the United States District Court for the Southern District of West Virginia found that:

> Plaintiffs learned that the market value of their home had been inflated, allegedly fraudulently, in July 2005 when the home was retrospectively appraised.   Thus, they did not discover the harm until the home was appraised in 2005.   At that point, [p]laintiffs knew   they had been injured, knew the identity of [d]efendants who injured them, and knew that said [d]efendants were responsible for causing that injury.   Accepting as true [p]laintiffs' allegation, [d]efendant's wrongful conduct was concealed from [p]laintiffs until the retrospective appraisal.   The discovery rule applies here and the statute of limitations began to run in July 2005.

*See* **Green v. Bank of America**, 2008 WL 916989, at *2 (S.D. W. Va. April 2, 2008).

Moreover, while the Plaintiff's signature appears on a document titled "Acknowledgment of Receipt of Copy of Appraisal Report" on April 3, 2008, he claims to be an unsophisticated consumer who had no idea or reason to suspect that the appraisal was inflated until it was brought to his attention in July of 2011.

The Defendants bear the "heavy burden" to demonstrate to the Court that a

10

non-diverse defendant has been fraudulently joined. The Court finds that legitimate questions exist regarding the application of West Virginia's discovery rule to the relevant statutes of limitation in this case. As such, the Defendants fail to meet their burden to prove fraudulent joinder to this Court, and the Court finds that it lacks diversity jurisdiction over this case.

### B. Bankruptcy-Related Jurisdiction

Under bankruptcy related jurisdiction, "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. §1452. Pursuant to 28 U.S.C. §1334(a)-(b), "the district courts shall have original and exclusive jurisdiction of all cases under Title 11. . . [and] original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11."

"[C]ivil proceedings arising under Title 11 include those created by Title 11 such as a claim for exemptions under §522 or the exercise by the trustee of an avoiding power under §544(b)." *Barge v. Western Southern Life Ins. Co.*, 307 B.R. 541, 544 (N.D. W. Va. 2004) (citing 1 Collier on Bankruptcy ¶3.01(4)(b)(i) (15th ed. 2003)). "Those arising in a case under Title 11 include administrative matters, allowance or disallowance of claims, determination of liens and other matters that take place as part of the administration of the bankruptcy estate." *Id.* (citing Collier, *supra*, at ¶3.01(4)(b)(iv)). "Proceedings under Title 11 or arising in a case under Title 11 fall generally into the category known as core proceedings under 28 U.S.C. §157(b)(2)." *Id.* "'[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a

11

proceeding that, by its nature, could arise only in the context of a bankruptcy case.'" *Id.* (quoting *Wood v. Wood*, 825 F.2d 90, 97 (5th Cir. 1987)).

In the instant case, the Plaintiff concedes that to the extent he seeks in part to void his mortgage loan, this case is arguably a core proceeding under 28 U.S.C. §157(b)(2)(K), in that it constitutes a "determination[ ] of the validity, extent, or priority of liens."   This Court likewise concludes that this action is, at least in part, a core proceeding, inasmuch as it constitutes a determination of the validity, extent, or priority of a lien, bringing this matter squarely within the jurisdiction of this Court under the ambit of 28 U.S.C. §157(b)(2)(K).   *See Wolfe v. Greentree Mortg. Corp.*, 2010 WL 391629, at *2 (N.D. W. Va. Jan 26, 2010) (citing *In re Smith*, 300 B.R. 828, 829-30 (Bankr. M.D. Ga. 2003); *In re Tetterton*, 379 B.R. 595 (Bankr. E.D.N.C. 2007)).

However, the Plaintiff argues that the Court should nevertheless exercise its discretion to permissively abstain pursuant to 28 U.S.C. §1334(c)(1).   In the alternative, the Plaintiff argues that the Court should equitably remand this case pursuant to 28 U.S.C. §1452(b).

**III.**     **Abstention and Equitable Remand**

**A. Mandatory Abstention**

The law requires this Court to abstain from exercising jurisdiction over "a State law claim or State law cause of action, related to a case under Title 11 but not arising under Title 11 or arising in a case under Title 11, with respect to which an action *could not have been commenced in a court of the United States absent jurisdiction under this section*...."   28 U.S.C. §1334(c)(2) (emphasis added).

In   *Barge v. Western Southern Life Ins. Co.*, 307 B.R. 541, 546 (N.D. W. Va.

12

2004) this Court discussed the applicable standard, stating "[f]or mandatory abstention to apply it is necessary that a timely motion be made . . . and the proceeding must '(1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) *be a non-core proceeding.*'" **Barge**, 307 B.R. at 546 (quoting **In re Dow Corning Corp.**, 113 F.3d 565, 570 (6th Cir. 1997)) (emphasis added).

Pursuant to 28 U.S.C. §157, "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments . . . ." "Core proceedings" include "determinations of the validity, extent, or priority or liens." 28 U.S.C. §157(b)(2)(K). "On the other hand, proceedings that are merely related to a bankruptcy case are generally considered to be non-core." **Barge**, 307 B.R. at 544. The distinction between core and non-core is found in the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353 (1984), and "[i]ts purpose is to direct nearly all, though not all, core proceedings to an Article I bankruptcy judge, while related proceedings in the federal system are committed to an Article III judge." **Id.**

As discussed earlier herein, the Plaintiff concedes, and this Court finds, that to the extent the Plaintiff seeks in part to void his mortgage loan, this case is a core proceeding under 28 U.S.C. §157(b)(2)(K), in that it constitutes a "determination[ ] of the validity, extent, or priority of liens." Therefore, mandatory abstention is inapplicable.

### B. Permissive Abstention and Equitable Remand

Having determined that mandatory abstention inapplicable, the Court must determine if the doctrines of permissive abstention and equitable remand apply to the

13

instant case. Federal law allows this Court to permissively abstain from exercising jurisdiction:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under Title 11.

28 U.S.C. §1334(c)(1).

In addition to permissive abstention, the law provides for so-called "equitable remand" under 28 U.S.C. §1452(b), which provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."

Courts have identified twelve factors in considering whether to permissively abstain under §1334(c)(1):

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. §1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on [the bankruptcy court's] docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.

*Barge*, 307 B.R. at 547 (citing *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir. 1990); *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 6 F.3d

14

1184, 1189 (7th Cir. 1993)).

"Virtually the same factors supporting abstention under §1334(c) support equitable remand under §1452(b)." **Barge**, 307 B.R. at 548 (citing **In re Riverside Nursing Home**, 144 B.R. 951, 957 (S.D.N.Y. 1992)).   Specifically, the following considerations have been articulated by courts concerning the issue of whether to remand under §1452(b):

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of a right to jury trial; and (7) prejudice to the party involuntarily removed from state court.

**Barge**, 307 B.R. at 548 (citing **Riverside Nursing Home**, *supra*).

Applying the above-cited factors to the instant case, the Court concludes as follows:

**1)**     The Court finds no reason that abstention and remand to state court would affect the efficiency with which the claim is handled.   Therefore, this factor is neutral.

**2)**     The Plaintiff's causes of action all arise under West Virginia law, and present no substantive bankruptcy issues whatsoever. As state law issues predominate over bankruptcy issues, this factor weighs in favor of abstention/remand.  *See, e.g.,* **Loudin v. J.P. Morgan Trust Co.**, 481 B.R. 388, 396 (S.D. W. Va. 2012).

**3)**     The Court finds that the claims at issue in this case raise unsettled questions of West Virginia law that would present the bankruptcy court and/or this Court with policy issues and matters of first impression not decided by the West Virginia Supreme Court of Appeals.   Hence, this factor weighs heavily in favor of

abstention/remand.

In addition to the statute of limitations issue addressed previously in this Order, two unsettled state law issues arise in the instant matter.   First, whether West Virginia law confers a private right of action under the claims asserted in Counts IV-V.   Second, whether under West Virginia law, a homeowner stands in the requisite privity with an appraiser for purposes of bringing suit.

### a)  Private Right of Action Issue

In Count IV, the Plaintiff alleges that Defendant Bradley made a fraudulent appraisal in violation of W. Va. Code §30-38-12(3).   In Count V, the Plaintiff alleges that Defendant Bradley accepted a fee contingent on a predetermined conclusion in violation of W. Va. Code §30-38-12(8).

The Defendants argue that Counts IV-V are improper because W. Va. Code §30-38-12 does not confer a private right of action in a homeowner against an appraiser. That Code section, codified as part of the Real Estate Licensing and Certification Act ("REALCA"), is entitled "Refusal to issue or renew license or certification; suspension or revocation; grounds for disciplinary action."   In support of their argument, the Defendants cite to a West Virginia trial court decision, *Milhouse v. Homecomings Fin.*, Civil Action No. 07-C-187 (Cir. Ct., Ohio County, W. Va., May 21, 2010), *aff'd on other grounds*, 2011 W. Va. LEXIS 221 (W. Va. Mem. Dec. June 24, 2011).   In *Milhouse*, the state trial court found that:

> Pursuant to the authority granted to it by the Real Estate Appraiser Licensing and Certification Act, the West Virginia Real Estate Appraiser Licensing and Certification Board promulgated West Virginia State Rules §§190-4-1, et seq. The Court finds that §§190-4-1 does not create a private right

16

of action, but instead provides for the disposition of complaints against appraisers . . . .

Upon review of W. Va. CSR §190-4-1, *et seq.*, it appears to only address disciplinary proceedings by the Appraisal Review Board, and not the issue of a right of private action.   Nevertheless, the Plaintiff asserts that the ***Milhouse*** decision raises an unsettled question of law as to how claims for professional negligence against real estate appraisers can be brought, which would be best determined by a West Virginia court.

b) **Plaintiff's Privity Issue**

The second and more significant unsettled issue of state law has to do with whether or not, under West Virginia law, a homeowner stands in the requisite privity with an appraiser for purposes of bringing suit.   The Defendants argue that "[u]nder West Virginia law . . . a plaintiff may not recover in negligence for purely economic losses absent a contractual or other 'special relationship' with the alleged tortfeasor sufficient to impose a duty of care."   *See* Syllabus Pt. 9, ***Aikens v. Debow***, 541 S.E.2d 576 (W. Va. 2000).

The Plaintiff argues that upon closer review, ***Aikens*** does not settle the issue. ***Aikens*** involved a tractor-trailer that struck an Interstate highway overpass and caused significant damage to it.   It took weeks for state highway officials to repair the overpass. In the meantime, the owner of a local motel alleged that he lost thousands of dollars in revenue as a result of the closure of the Interstate exit.   He therefore brought a negligence action against the truck driver, seeking to recover his lost revenue.   ***Id.*** at 579-80.

The West Virginia Supreme Court of Appeals narrowed the relevant issue to

17

"whether economic loss from an interruption in commerce in the absence of damage to a plaintiff's person or property is recoverable in a tort action."  **Aikens**, 541 S.E.2d at 583. The Supreme Court of Appeals ultimately concluded that:

> [A]n individual who sustains purely economic loss from an interruption in commerce caused by another's negligence may not recover damages in the absence of physical harm to that individual's person or property, a contractual relationship with the alleged tortfeasor, or some other special relationship between the alleged tortfeasor and the individual who sustains purely economic damages sufficient to compel the conclusion that the tortfeasor had a duty to the particular plaintiff and that the injury complained of was clearly foreseeable to the tortfeasor.

*Id.* at Syllabus Pt. 9.   The Court further held that:

> The existence of a special relationship will be determined largely by the extent to which the particular plaintiff is affected differently from society in general. . . [W]here a special and narrowly defined relationship can be established between the tortfeasor and a plaintiff who was deprived of an economic benefit, the tortfeasor can be held liable.
> …
>
> For example, auditors have been held liable to plaintiffs who bought stock in reliance upon a financial statement negligently prepared for a corporation; surveyors and termite inspectors liable to remote purchasers of property; engineers and architects liable to contractors who relied upon plans negligently prepared for property owners who later hired the contractors; attorneys and notaries public liable to beneficiaries of negligently prepared wills; real estate brokers for failure to disclose defects; and telegraph companies liable to individuals who failed to secure a contract due to the negligent transmission of a message.

*Id.* at 589-91 (internal citations omitted).   The foregoing clearly undermines the Defendants' argument that an appraiser could not under West Virginia law be liable in negligence to a home purchaser who relies on an appraisal prepared at the behest of a

18

lender.   Particularly in the context of the conspiracy alleged in the instant case, the appraiser could be said to have known the person likely to be injured, the injury likely to occur, and the damages likely to be suffered.

The West Virginia Supreme Court of Appeals has ruled in other contexts that a professional can owe a duty to a third party even when there is a lack of privity between the two.   In **Eastern Steel Contractors, Inc. v. City of Salem**, 549 S.E.2d 266 (W. Va. 2001), the Court held that "[i]n the matters of negligence, liability attaches to the wrongdoer, not because of a breach of a contractual relationship, but because of a breach of duty which results in an injury to others."   *Id.* at Syllabus Pt. 3.   Therefore, "[a] design professional (e.g. an architect or engineer) owes a duty of care to a contractor, who has been employed by the same project owner as the design professional and who has relied upon the design professional's work product in carrying out his or her obligations to the owner, notwithstanding the absence of privity of contract between the contractor and the design professional, due to the special relationship that exists between the two."   *Id.* at Syllabus Pt. 6.

The Court concludes from all of this that a legitimate question exists regarding the state of West Virginia law as it regards any duty owed by an appraiser to a future home buyer, despite the appraiser's being retained by a lender-bank.   The unsettled nature of the applicable law weighs heavily in favor of abstention/remand.

**4)**   In considering the presence of a related proceeding commenced in state court or another bankruptcy court, the Court finds this factor to be neutral.   The Plaintiff originally filed this action in the Circuit Court of Kanawha County, West Virginia.   The Plaintiff's bankruptcy case has been reopened and is currently pending in the Bankruptcy

19

Court for the Northern District of West Virginia.   Regardless of whether the Plaintiff's state law causes of action are decided by a federal court or by a state court, the bankruptcy trustee will be able to administer any recovery ultimately made by the Plaintiff as an asset under ordinary bankruptcy rules and principles.

5)      In considering the jurisdictional basis, this Court has determined that the action lacks required diversity.   Other than 28 U.S.C. §1334, the Court finds that this Court lacks any additional federal jurisdiction.   Accordingly, this factor weighs heavily in favor of abstention/remand.   *See, e.g.,* ***Loudin***, *supra*, at 396.

6)      In considering the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, the Court finds this factor to be neutral.   On the one hand, the resolution of these issues could have an impact on the Plaintiff's bankruptcy estate, and to the extent that the Plaintiff alleges the Defendants fraudulently induced him into a series of detrimental financial transactions which might presumably be said to have contributed to the filing of the Plaintiff's bankruptcy petition, the two proceedings may be related.   On the other hand, the Plaintiff's Complaint alleges statutory and tort-based claims which are wholly remote from the issue of bankruptcy itself.

7)      In considering the substance, rather than the form, of an alleged "core" proceeding, the Court finds that the Plaintiff's claims are in substance statutory and tort-based allegations stemming from the Defendants' purportedly fraudulent behavior. The Plaintiff's claims arise under state law and are only tangentially related to the issue of bankruptcy.   Therefore, this factor weighs heavily in favor of abstention/remand.

8)      In considering the feasibility of severing state law claims with enforcement left to the bankruptcy court, the Court finds no reason to believe that it would be

inconvenient to have state law judgments enforced in bankruptcy court if necessary once they are rendered.   The Court finds that this factor weighs in favor of abstention/remand.

9)   In considering the burden on the bankruptcy court's docket, the Court finds that this matter would not unduly burden the bankruptcy court's docket.   Hence, this factor is neutral.

10)   In considering the likelihood of forum shopping by one of the parties, the Court finds this factor to be neutral.   The Plaintiff accuses the Defendants of forum shopping by removing this action to federal court, while the Defendants accuse the Plaintiff of forum shopping by filing his state court action in a different county and, hence, federal district from where the property is physically located and where the Plaintiff's bankruptcy estate was administered.   The Court does not find this factor to weigh heavily either way.

11)   In considering the existence of a right to a jury trial, the Court notes that in bankruptcy, there is no right to trial by jury, which would be available in state court. However, that issue could be addressed by the district court's withdrawal of any referral to bankruptcy court.   *See, e.g.*, *In re Brooks Mays Music Co.*, 363 B.R. 801, 818 (Bankr. N.D. Tex. 2007) ("This court can and will, in light of the jury trial request, recommend that the district court withdraw the reference, to conduct a jury trial in this matter, but that the bankruptcy court be allowed to preside over all pretrial matters which this court can very promptly address."); *In re Mid-Atlantic Resources Corp.*, 283 B.R. 176, 191-92 (S.D. W. Va. 2002).   Hence, the Court finds this factor to be neutral.

12)   With respect to the presence in the proceeding of non-debtor parties, all Defendants are non-debtor parties, and only Huntington Mortgage is listed as a creditor

21

on the Plaintiff's bankruptcy petition.   However, given the close relationship between the Defendants in this case, the Court does not find this factor to necessarily weigh in favor of abstention/remand, and to be, at most, neutral.

13)   In considering the two additional equitable remand factors—comity and prejudice—the Court finds that given the unsettled nature of state law with regard to Plaintiff's state law claims, coupled with the lack of diversity jurisdiction or other basis for removal to federal court absent Plaintiff's related bankruptcy proceeding, respect for comity weighs heavily in favor of abstention/remand.[3]   Finally, in considering prejudice to any party involuntarily removed from state court, the Court finds this factor to be neutral.

## VI.   CONCLUSION

This matter involves claims arising entirely under state law causes of action and raising unsettled questions of West Virginia law.   This Court lacks diversity jurisdiction, but has jurisdiction due to Plaintiff's bankruptcy proceeding, in which any recovery could potentially serve as an asset.   Abstention and remand would not be unduly burdensome, nor would it be inconvenient for a West Virginia court's judgment to be enforced in the bankruptcy court.   At the heart of the doctrine of abstention lies the concept of comity,

---

[3]

The Court has considered and rejected the Defendants' argument that the case *sub judice* is directly analogous to *Wolfe v. Greentree Mortgage Corp.*, 2010 WL 391629 (N.D. W. Va. Jan. 26, 2010).   While there are many similarities between the instant case and *Wolfe*, the Court can identify at least two important differences.   First, the *Wolfe* court found diversity jurisdiction to exist in that case, thereby affording the removing defendants additional jurisdictional bases beyond simply §1334.   *See Wolfe*, *supra*, at *2-4.   Second, the *Wolfe* court found the applicable state law in that case to be well-settled, noting that it "ha[d] a large number of diversity cases on its docket which deal with the same or similar issues."   *Id.* at *4.   In the instant case, both of these conclusions run to the contrary, rendering this case distinguishable from *Wolfe* and mandating a different holding.

and, under present circumstances, no pressing federal interest requires this Court to determine unsettled state law issues.   The Court therefore exercises its discretionary prerogative pursuant to 28 U.S.C. §§1334(c)(1) and 1452(b) to abstain from deciding this matter and remand it to the state court.

For the foregoing reasons, this Court concludes that the Plaintiff's Motion to Abstain and Remand **[Doc. 8]** must be **GRANTED**.   The Court hereby **ABSTAINS** from hearing this case, and it is accordingly **REMANDED** to the Circuit Court of Kanawha County, West Virginia.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and/or *pro se* parties.

**DATED:** July 26, 2013.

GINA M. GROH
UNITED STATES DISTRICT JUDGE